UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JAMES E. STEWART                                        PLAINTIFFS

versus                        Civil Action No: 2:10-cv-00149-DCB-JMR

GMAC MORTGAGE, LLC;
and ALLY BANK                                           DEFENDANTS

### OPINION AND ORDER

This matter comes before the Court on Defendants' GMAC
Mortgage, LLC ("GMAC") and Ally Bank ("Ally") Motion to Dismiss
[docket entry no. 7].  Having carefully considered the Motion,
Responses thereto, and applicable statutory and case law, and being
otherwise fully advises in the premises, the Court orders and finds
as follows:

### I.  Facts and Procedural History

In 2005, Plaintiff James E. Stewart, purchased a house in
Hattiesburg, Mississippi, financed by Defendant GMAC.  After
failing to make payments on his mortgage for over a year, Stewart
placed his home for sale in March 2009, shortly before GMAC
notified Stewart of its intent to foreclose and scheduled a
foreclosure sale to take place on April 16, 2009.  Before the
foreclosure sale occurred, Stewart secured a buyer for the property
and wrote to GMAC requesting that it terminate the foreclosure and
approve the sale of the property to Stewart's buyer for less than
the balance owed on the loan (known in the industry as a "short
sale").  GMAC did not respond to Stewart's request and thus the

short sale was not consummated.  The foreclosure sale scheduled for April 16, 2009 also did not occur (it is unclear why).  The following month, in May 2009, Stewart again placed his home for sale and secured a buyer for the property and again wrote to GMAC requesting approval for a short sale.  GMAC again failed to respond to Stewart's request in time for the sale to be consummated. Instead, GMAC again notified Stewart that it intended to foreclose and sell the home by public outcry, which it did on June 18, 2009. One month later, on July 28, 2009, GMAC rescinded the foreclosure sale.  Stewart alleges that the sale was rescinded because GMAC realized that it had never made a decision on his short sale requests.

Stewart alleges that beginning in January 2009 (before he ever placed his home on the market), representatives of GMAC told him on multiple occasions, either in writing or orally, that GMAC would not foreclose on his property and would allow him time to sell it. Stewart further alleges that GMAC representatives told him that they were reviewing the proposed short sale contracts submitted in March and May of 2009 but that GMAC lacked any intent to do so. E.g., Compl. [docket entry no. 1] ¶¶ 30, 33.

Since the July 2009 foreclosure, Stewart alleges that he has not had access to the property, though he admits that GMAC sent him keys on three different occasions that did not work.  Compl. ¶¶ 20-22.  On March 8, 2010, GMAC again notified Stewart of its intent to

foreclose and that it would sell Stewart's property through public outcry scheduled on April 1, 2010, but that sale was postponed after Stewart filed the instant litigation.

Stewart filed this diversity and federal question action in June 2010, alleging multiple counts against GMAC and Ally Bank[1]: Counts I-III allege violations of civil RICO laws pursuant to 18 U.S.C. § 1964; Count IV alleges breach of the duty of good faith and fair dealing; Counts V and VI allege promissory and equitable estoppel; Count VII alleges breach of contract and intentional breach of contract; Count VIII alleges negligence; Counts IX and X allege negligent and intentional infliction of emotional distress; Count XI alleges fraud; Count XII seeks an accounting; Count XIII claims wrongful foreclosure; and Count XIV seeks a temporary and permanent injunction.[2]   Defendants move to dismiss each of the counts of the Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).   Federal substantive law governs Stewart's RICO claims but Mississippi substantive law governs the remaining claims, which are asserted pursuant to this Court's diversity jurisdiction.

_____

[1]  GMAC and Ally Bank are apparently one and the same. Plaintiff alleges that GMAC is "currently" Ally Bank.

[2]  Stewart notified the Court in July 2010 that he did not intend to proceed with the request for injunctive relief and has apparently abandoned this Count.  Moreover, Stewart did not respond to Defendants' Motion to Dismiss regarding the injunctive relief and thus the Motion is granted as to this Count.

3

Krieser v. Hobbs, 166 F.3d 736, 769 (5th Cir. 1999).

**II.   Standard for Motion to Dismiss under Rule 12(b)(6)**

When considering a motion to dismiss under Rule 12(b)(6), the district court must accept all well-pleaded facts as true and view the facts in a light most favorable to the plaintiff.  Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).   The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).   The Supreme Court has stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(citations omitted).   To have facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.'" Id. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 550 U.S. at 546.

Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1914)(overruled on other grounds)).  In considering a motion to dismiss under Rule 12(b)(6), this Court must limit itself to the contents of the pleadings, including any attachments thereto.  Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).  Here, Stewart attached 14 documents to the Complaint which this Court can and will consider without converting Defendants' motion to one for summary judgment under Rule 56.

### III.  Analysis

**A.   Counts I - III: Civil Rico Claims**

Stewart alleges three civil RICO claims pursuant to 18 U.S.C. § 1964(c).  To state a civil RICO claim, a plaintiff must first allege "standing" as required by § 1964(c) and then must allege the elements of a substantive RICO violation.  Price v. Pinnacle Brands, Inc., 138 F.3d 601, 606 (5th Cir. 1998).  Here, Stewart alleges three substantive RICO violations under 18 U.S.C. §§ 1962(a)-(c).[3]  The elements of a violation of § 1962 are: (1) a person who engages in (2) a pattern of racketeering activity, (3)

---

[3] The Complaint's three RICO counts each allege violations of 18 U.S.C. §§ 1962(a)-(d) but in his RICO statement, the Plaintiff states only that Defendants' conduct violated §§ 1962(a),(b), and (c).  Accordingly, Stewart has apparently abandoned the allegation that Defendants' conduct violated § 1962(d).

connected to the establishment, conduct, or control of an enterprise. In re Burzynski, M.D., 989 F.2d 733, 741-42 (5th Cir. 1993)(citing Delta Truck & Tractor, Inc. v. J.I. Case Co., 855 F.2d 241, 242 (5th Cir. 1988)).  Defendants do not challenge the first element for any of Counts I, II, or III but do challenge the second element (a pattern of racketeering activity) for all counts. Additionally, Defendants challenge the sufficiency of each count to the extent that it alleges a violation of § 1962(a) for failure to allege an investment injury and to the extent based on § 1962(c) for failure to allege an enterprise conducted by a distinct person.

The second element of a civil RICO claim, a "pattern of racketeering activity" has two components: (1) predicate acts, i.e., the requisite racketeering activity; and (2) a pattern of such acts.  Id.

1. *Predicate Acts*

Each of the three RICO counts is founded on a separate "predicate act": (1) extortionate extensions of credit under 18 U.S.C. § 891, et seq. (Count I), (2) mail fraud in violation of 18 U.S.C. § 1341 (Count II); and (3) wire fraud in violation of 18 U.S.C. § 1343 (Count III).  Defendants argue that Count I fails to state a RICO claim predicated on extortionate credit transactions under 18 U.S.C. § 892 because Stewart has not alleged "extortionate" activity.  Section 891 of that chapter defines "extortionate" means as "any means which involves the use, or an

6

express or implicit threat of use, of violence or other criminal means to cause harm to the person, reputation, or property of any person." Defendants argue that the Complaint does not allege any "threats of violence or other criminal means" by Defendants used in conjunction with their extension of credit to Stewart and thus Stewart has not alleged a violation of § 892. Stewart counters that the Complaint alleges that Defendants engaged in acts of false pretense, trespass, and forgery, all of which are "other criminal means."

Though the Fifth Circuit has not considered what constitutes "other criminal means" under § 891, at least two other Courts of Appeals have held that such acts must include some component of violence. U.S. v. Pacione, 738 F.2d 567, 572 (2d Cir. 1984); Robert Suris Gen. Contractor Corp. v. New Metro. Fed. Sav. & Loan Ass'n, 873 F.2d 1401, 1405 (11th Cir. 1989). Indeed, the Pacione Court explicitly held that its "review of the legislative history convinces us that congress ... did not intend to authorize a federal 20 year punishment for every creditor who violated some other state or federal criminal statute in the process of making or collecting a usurious loan." 738 F.2d at 572. Accordingly, even assuming for the sake of argument that the Complaint sufficiently alleges false pretense, trespass, and forgery, none of these contain any element of violence and thus the Complaint is insufficient to state a civil RICO claim predicated upon a

violation of 18 U.S.C. § 891, *et seq.*  Accordingly, Count I must be dismissed.

With respect to Counts II and III, Defendants argue that Stewart has failed to allege the predicate acts of mail and wire fraud with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure.  Rule 9(b), which applies to civil RICO claims predicated upon mail or wire fraud, requires allegations of "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Tel-Phonic Serv., Inc. v. TBS Intern., Inc., 975 F.2d 1134, 1138 (5th Cir. 1992) (citations omitted).  Stewart counters that his allegations are sufficiently particularized but concedes that the recitation of facts in the Complaint is not comprehensive because the names of certain individuals employed by Defendants who made communications to him are not yet known and all documentation is "not yet completely assembled."  Pl. Rebuttal [docket entry no. 16] at 7. Further, Stewart notes that he expects that Defendants will possess records of their communication with him in which case he will be able to identify specific employees and specific dates on which information was communicated to him.  Stewart relies on precedent permitting a "relaxation" of Rule 9(b)'s pleading standards where "the facts relating to the alleged fraud are particularly within the perpetrator's knowledge." United States ex rel Russell v. Epic

Healthcare Mgmt. Group, 193 F.3d 304, 308 (5th Cir. 1999).

This Court agrees with Defendants that Stewart has not met the heightened pleading requirements of Rule 9(b) with respect to his RICO claims predicated on mail and wire fraud.  Stewart does not specifically identify any of the allegedly fraudulent statements that GMAC made to him beginning in January 2009 by date or speaker or specific content.  He avers only the general content of the communications (that GMAC informed him that it would not foreclose while his short sale applications were pending and that it would review the short sale applications in good faith) but not specifically what was written or said.  Indeed, he does not even allege whether the communications were written or oral.  These vague, unspecified, and undated allegations do not meet the heightened pleading requirement of Rule 9(b).

Nor is this a situation, as Stewart argues, in which those standards may be relaxed because the relevant information is particularly within the knowledge of Defendants.  The alleged fraudulent statements were communicated *to Stewart* and thus he must know when they happened and what specifically was said.  See Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard, 262 F.Supp.2d 898, 914 (N.D. Ill. 2003) (noting Rule 9(b) standards could be relaxed where plaintiff alleges fraud by multiple defendants acting in concert but that plaintiff must satisfy 9(b) with respect to defendants with whom he dealt directly).  Indeed,

because these counts allege mail and wire fraud, they presumably derive from some written communication which Stewart received and thus he should know the dates and specific contents of such communications.   Stewart cannot rely on the prospect of future discovery to cure his pleading deficiencies when he already should possess the necessary information to craft a proper complaint.   In short, Stewart has not pleaded the alleged mail and wire fraud which forms the basis for Counts II and III with particularity and thus those claims must be dismissed.

 2.   *Pattern*

 Even if Counts I, II, and III sufficiently alleged predicate acts, Defendants also argue that Stewart has failed to plead a *pattern* of such acts.   Stewart counters that he has alleged a pattern because Defendants made numerous statements indicating that they were reviewing his short sale proposals in good faith and would not institute foreclosure proceedings and then actively pursued foreclosure against him multiple times.   Further, Stewart supports the alleged pattern of racketeering activity by attaching to his Rebuttal and his RICO statement news articles detailing disorganization and mistaken foreclosures at banks and discussing specifically Defendants' admissions in those articles that they had processed foreclosures without conducting due diligence.

 To allege a "pattern of racketeering activity," a plaintiff must show that the defendant committed two or more predicate

offenses that are (1) related and (2) amount to or pose a threat of continued criminal activity.  Word of Faith World Outreach Center Church, Inc. v. Sawyer, 90 F.3d 118, 122 (5th Cir. 1996).  But "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown."  Id. at 123.  In In re Burzynski, the Fifth Circuit affirmed dismissal of a RICO complaint for failure to plead a pattern of racketeering activity where a doctor alleged that an insurance company had committed various fraudulent acts over several months of litigation because the alleged acts all took place during the course of a single lawsuit.  989 F.2d at 742-43.  Moreover, under facts very similar to those at issue here, another district court in this circuit relied on In re Burzynski to dismiss a RICO claim filed by a homeowner against his mortgage lender for, among other things, a failure to allege a pattern of racketeering activity.  Castrillo v. Am. Home Mort. Serv., Inc., 670 F.Supp.2d 516, 530-31 (E.D.La. 2009).  Though the plaintiff had alleged multiple acts related to the refinance and attempted foreclosure of plaintiff's home, the Castrillo Court reasoned that "the allegedly fraudulent debt collection ... essentially, an eviction proceeding - is a single, discrete transaction."  Id. at 531.  For the same reasons, this Court holds that Defendants' alleged fraudulent statements in connection with the foreclosure of Stewart's home were all part of one transaction and do not qualify as a "pattern

11

of racketeering activity." Stewart's attempt to prove a pattern through the introduction of news articles detailing administrative foreclosure problems in other states is unavailing, as those articles were not attached to the Complaint and cannot be considered on this Motion to Dismiss. <u>A2D Tech. Inc. v. MJ Sys., Inc.</u>, 269 Fed.Appx. 537, 541 (5th Cir. 2008) (holding a court may consider documents attached to the complaint but not materials outside the complaint on a motion to dismiss).

Defendants also urge dismissal of Stewart's RICO claims because they fail to sufficiently allege a violation of § 1962(a) and because any alleged violation of the Home Affordable Foreclosure Alternatives Program cannot form the basis of a private right of action. Because the Court dismisses the three RICO counts for the reasons discussed above, it does not reach these arguments.

**B.   Count IV: Breach of the Duty of Good Faith and Fair Dealing**

As Count IV, Stewart alleges that Defendants breached the Mississippi common law duty of good faith and fair dealing by promising him time to sell his home via a short sale while simultaneously selling the property at foreclosure; by failing to timely respond to his requests for approval of a short sale; and by failing to communicate with him. Defendants move to dismiss because the foreclosure was quickly rescinded, indicating it was not the result of bad faith; because Defendants were under no contractual or other duty to respond timely to Stewart's short sale

requests; and because Defendants did, in fact, communicate extensively with Stewart, as the Complaint and attachments thereto reveal.

Under Mississippi law, "every contract contains an implied covenant of good faith and fair dealing." Merchants & Planters Bank of Raymond v. Williamson, 691 So.2d 398, 405 (Miss. 1997)(citation omitted).  Good faith and fair dealing requires the "faithfulness of an agreed purpose between two parties, a purpose which is consistent with the justified expectations of the other party." Cenac v. Murry, 609 So.2d 1257, 1272 (Miss. 1982).  Bad faith is "characterized by some conduct which violates standards of decency, fairness, or reasonableness." Williamson, 691 So.2d at 404.   The Defendants' conduct, as alleged, does not appear to violate standards or decency, fairness, or reasonableness. However, the allegations that Defendants' representatives promised to review Stewart's short sale proposals but instead foreclosed and failed to respond to them may constitute a breach of the duty of good faith and fair dealing.   Though Stewart admits in the Complaint that Defendants rescinded the foreclosure within weeks of its occurrence which suggests that foreclosure was a mistake, it is premature for this Court to find that there are no circumstances under which Stewart could show bad faith here.

Further, Stewart cites only one case, Cenac, 609 So.2d 1257, in which the defendant was found to have violated the duty of good

faith and fair dealing but the defendants' actions in <u>Cenac</u> are
easily distinguishable.  There, the defendant Murry engaged in a
"bizarre, abusive, aberrant, and intimidating pattern of behavior
after selling a country store to the Cenacs which 'made their life
a living hell.'" <u>Mann v. Amer. Federated Life Ins. Co.</u>, 146 F.3d
868, *2 (5th Cir. 1998) (quoting <u>Cenac</u>, 609 So.2d at 1272).  Murry
further fired guns at the Cenacs, insulted and mocked them in front
of prospective customers, and followed and videotaped them, all in
an effort to drive them from the store they had purchased from
Murry, allowing him to foreclose.  <u>Id.</u> (citing <u>Cenac</u>, 609 So.2d at
1262-66 and 72-23).  Defendants here did nothing similar to Stewart
and are alleged merely to have failed to follow through on verbal
promises not to do something (foreclose) which they were permitted
to do under the contract.  While no doubt frustrating to Stewart,
this behavior does not appear to be so egregious as to amount to a
breach of the duty of good faith and fair dealing.

    Moreover, numerous courts in Mississippi and the Fifth Circuit
have refused to find a breach of the duty of good faith and fair
dealing in ordinary lender/borrower disputes.  <u>Id.</u> at *3 (lenders'
refusal to accept deed to personal residence in lieu of foreclosure
on apartment building was "reasonable and not uncommon"); <u>Gen.</u>
<u>Motors Acceptance Corp. v. Baymon</u>, 732 So.2d 262, 269 (Miss. 1999)
(lender's threats to repossess car and decision to charge insurance
to borrower on vehicle was "duly authorized by the contract");

14

<u>McDaniel v. Citizens Bank</u>, 937 So.2d 26, 29 (Miss. Ct. App. 2006)(lender's repossession of vehicle after borrower failed to make loan payments was "within reasonable business practices"). Nevertheless, the Court will not dismiss this claim.

**C.   Counts V and VI: Promissory and Equitable Estoppel**

Stewart asserts a claim for promissory estoppel at Count V of the Complaint, alleging that Defendants were estopped from foreclosing on his property because they promised him that he would have an opportunity to sell it through a short sale.  To succeed on a claim for promissory estoppel under Mississippi law, a plaintiff must allege and prove: (1) the making of a promise, (2) the intention that the promise be relied upon, and (3) that a refusal to enforce the promise would sanction the perpetuation of fraud or would result in other injustice.  <u>Thompson v. First Am. Nat'l Bank</u>, 19 So.3d 784, 788 (Miss. Ct. App. 2009).  Relying on <u>Thompson</u>, Defendants move to dismiss the promissory estoppel claim because Stewart fails to allege the third element of the claim in that the foreclosure of Stewart's property was not an injustice because he was delinquent on his mortgage payments.

In <u>Thompson</u>, the plaintiff owned land financed by the defendant, First American Bank, and became delinquent in his loan payments.  <u>Id.</u> at 785.  After First American repeatedly threatened foreclosure, Thompson went to a First American branch office and spoke with a teller whom he told that he wanted to make two

payments on the loan.   Thompson alleged that he asked the bank
teller if two payments would stop the foreclosure and the teller
answered that they would.   First American later foreclosed and
Thompson brought a claim of promissory estoppel against the bank.
The Mississippi Court of Appeals held that even if the bank teller
said what Thompson alleged and the bank was bound by the teller's
representation, promissory estoppel was not appropriate because it
would not "sanction an injustice or perpetrate a fraud for a bank
to collect what is rightfully owed to it."   Id. at 789.

        This Court finds that Thompson is controlling.   Accordingly,
even accepting as true that a representative of GMAC told Stewart
that GMAC would not foreclose on his home, promissory estoppel is
not appropriate because a refusal to enforce that promise here
would not result in injustice.   Stewart was delinquent in his
mortgage payments and foreclosure was appropriate under the Deed of
Trust.   Stewart attempts to distinguish Thompson because the Court
of Appeals also held that there the bank teller did not have the
authority to speak on behalf of First American.   But the Court made
clear that its holding was not based on the lack of apparent
authority, stating "[e]ven assuming arguendo that the bank teller's
alleged representation to Thompson is binding on First American,
Thompson's promissory estoppel argument still fails, because our
failure to enforce the agreement would not sanction the
perpetuation of a fraud nor would it result in other injustice."

                                    16

Id. at 789.  Accordingly, Stewart's claim for promissory estoppel must be dismissed.

Stewart also asserts a claim for equitable estoppel.  A party asserting equitable estoppel must show that "(1) he has changed his position in reliance upon the conduct of another and (2) that he has suffered detriment caused by his change of his position in reliance upon such conduct."  PMZ Oil Co. v. Lucroy, 449 So.2d 201, 206 (Miss. 1984).  Defendants argue that Stewart has not stated a claim for equitable estoppel because he has not alleged that he changed his position as a result of Defendants' promises to review the proposed short sales and not to foreclose.  Stewart counters that he changed position by marketing the property, engaging with real estate agents, and attempting to secure a buyer, requiring significant effort, time, and money.  He argues that he would not have done these things if he had known that Defendants had no intention of reviewing the proposed contracts and would proceed with foreclosure in any event.  These are factual issues that must be resolved and therefore dismissal of Stewart's claim for equitable estoppel at this stage is denied.

## D.   Count VII: Breach of Contract and Intentional Breach of Contract

Regarding breach of contract, the Complaint alleges that "Defendants were contractually bound ... to forego foreclosure to allow [Stewart] time to sell the property ... to timely approve a reasonable sales contract."  Compl. ¶ 44.  To prove a breach of

17

contract, the plaintiff must show: (1) the existence of a valid and binding contract; and (2) that the defendant has broken, or breached it; and (3) that he has been damaged thereby. <u>Warwick v. Matheney</u>, 603 So.2d 330, 336 (Miss. 1992).  Curiously, the Complaint cites no specific contractual provisions, though it does attach the Deed of Trust.  Defendants move to dismiss, arguing that there is no provision of the Deed of Trust that requires Defendants to consider a short sale or to postpone a foreclosure while considering one.  Stewart counters by citing four specific provisions of the Deed of Trust that were allegedly breached. "Questions concerning the construction of contracts are questions of law," <u>Wesley M. Breland, Realtor, Inc. v. Amanatidis</u>, 996 So.2d 176, 179 (Miss. Ct. App. 2008), and thus appropriate for resolution by the Court on this motion to dismiss.

This Court will address each section of the Deed of Trust allegedly breached by Defendants in turn.

1.   *Section 6 - Occupancy*

That section provides:

> Borrower shall occupy, establish, and use the Property as Borrower's principal place of residence within 60 days after the execution of the Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

18

Deed of Trust [docket entry no. 1-2] at 7.   Stewart argues that
Defendants breached this provision by denying him access to the
property for several months because they provided him non-working
keys.   Such allegations do not state a breach of Section 6,
however, which simply requires Stewart to live in the property for
the first year after he purchased it.  Defendants' alleged failure
to provide Stewart with working keys does not violate this
provision which obligates Stewart and not Defendants.

    2.   *Section 7 - Preservation, Maintenance and Protection of
the Property; Inspections*

That section provides:

> Borrower shall not destroy, damage or impair
> the Property, allow the Property to
> deteriorate or commit waste on the Property.
> Whether or not Borrower is residing in the
> Property, Borrower shall maintain the Property
> in order to prevent the Property from
> deteriorating or decreasing in value due to
> its condition. Unless it is determined
> pursuant to Section 5 that repair or
> restoration is not economically feasible,
> Borrower shall promptly repair the Property if
> damaged to avoid further deterioration or
> damage.  If insurance or condemnation proceeds
> are paid in connection with damage to, or the
> taking of, the Property, Borrower shall be
> responsible for repairing or restoring the
> Property only if Lender has released proceeds
> for such purposes. Lender may disburse
> proceeds for the repairs and restoration in a
> single payment or in a series of progress
> payments as the work is completed. If the
> insurance or condemnation proceeds are not
> sufficient to repair or restore the Property,
> Borrower is not relieved of Borrower's
> obligation for the completion of such repair
> or restoration.

19

> Lender or its agent may make reasonable
> entries upon and inspections of the Property.
> If it has reasonable cause, Lender may inspect
> the interior of the improvements on the
> Property. Lender shall give Borrower notice
> at the time of or prior to such an interior
> inspection specifying such reasonable cause.

Deed of Trust at 7. Stewart argues that Defendants breached this
provision because they took possession of the property in a manner
that was not reasonable and did not provide appropriate notice to
Stewart before doing so. However, the plain reading of Section 7
again obligates Stewart and not Defendants. Moreover, it says
nothing of Defendants taking possession of the property but rather
addresses only Defendants inspecting the property upon reasonable
notice. Section 7 simply does not do what Stewart argues and thus
he does not state a claim for breach of Section 7.

3.  *Section 14 - Loan Charges*

That section provides:

> Lender may charge Borrower fees for services
> performed in connection with Borrower's
> default, for the purpose of protecting
> Lender's interest in the Property and rights
> under this Security Instrument, including, but
> not limited to, attorneys' fees, property
> inspection and valuation fees. In regard to
> any other fees, the absence of express
> authority in this Security Instrument to
> charge a specific fee to Borrower shall not be
> construed as a prohibition on the charging of
> such fee. Lender may not charge fees that are
> expressly prohibited by this Security
> Instrument or by Applicable Law.
>
> If the Loan is subject to a law which sets
> maximum loan charges, and that law is finally
> interpreted so that the interest or other loan

> charges collected or to be collected in
> connection with the Loan exceed the permitted
> limits, then: (a) any such loan charge shall
> be reduced by the amount necessary to reduce
> the charge to the permitted limit; and (b) any
> sums already collected from Borrower which
> exceeded permitted limits will be refunded to
> Borrower. Lender may choose to make this
> refund by reducing the principal owed under
> the Note or by making a direct payment to
> Borrower. If a refund reduces principal, the
> reduction will be treated as a partial
> prepayment without any prepayment charge
> (whether or not a prepayment charge is
> provided for under the Note). Borrower's
> acceptance of any such refund made by direct
> payment to Borrower will constitute a waiver
> of any right of action Borrower might have
> arising out of such overcharge.

Deed of Trust at 10.  Stewart argues that Defendants charged him

for obtaining hazard insurance on the property which was improper

under this provision both because of insufficient notice and

because he was being denied entry to and use of the property when

the charge was levied.  But Stewart did not include this allegation

in his Complaint and thus has not pleaded breach of contract on

this basis.  Moreover, even if he had done so, Section 14 does not

address the requirement that Stewart obtain insurance on the

property.  Instead, that issue is addressed at Section 5 which

specifically requires Stewart to insure the property against

hazards and provides that the Lender may obtain insurance coverage

at the Borrower's expense if the Borrower fails to maintain

coverage.  Thus, not only does the Defendants' alleged conduct not

breach Section 14, the conduct is specifically contemplated by

Section 5.


   4.  *Section 15 - Notices*

   That section provides:

      All notices given by Borrower or Lender in
connection with this Security Instrument must
be in writing. Any notice to Borrower in
connection with this Security Instrument shall
be deemed to have been given to Borrower when
mailed by first class mail or when actually
delivered to Borrower's notice address if sent
by other means. Notice to anyone Borrower
shall constitute notice to all Borrowers
unless Applicable Law expressly requires
otherwise. The notice address shall be the
Property Address unless Borrower has
designated a substitute notice address by
notice to Lender. Borrower shall promptly
notify Lender of Borrower's change of address.
If Lender specifies a procedure for reporting
Borrower's change of address, then Borrower
shall only report a change of address through
that specified procedure. There may be only
one designated notice address under this
Security Instrument at anyone time. Any notice
to Lender shall be given by delivering it or
by mailing it by first class mail to Lender's
address stated herein unless Lender has
designated another address by notice to
Borrower. Any notice in connection with this
Security Instrument shall not be deemed to
have been given to Lender until actually
received by Lender. If any notice required by
this Security Instrument is also required
under Applicable Law, the Applicable Law
requirement will satisfy the corresponding
requirement under this Security Instrument.

Deed of Trust at 10-11.  Stewart argues that Defendants breached

this section by holding multiple foreclosure sales and levying

charges for hazard insurance without sufficient notice, as well as

by failing to review short sale contracts in a timely manner.  The court declines to consider Stewart's allegation regarding hazard insurance because it is not included in the Complaint and because the Deed of Trust specifically authorizes Defendants to obtain it at Stewart's expense.  With respect to the allegation that Stewart did not receive adequate notice of foreclosure, such conduct does not breach Section 15 but even if it did, the Complaint belies Stewart's current allegations by admitting that Defendants did, in fact, notify him of impending foreclosure sales.  Compl. ¶¶ 10, 17, 23.  Lastly, with respect to the allegation that Defendants failed to timely review the proposed short sale contracts, nothing in Section 15 requires them to review short sale proposals or to do so in a timely manner.

In sum, the conduct alleged in the Complaint does not amount to a breach of any of the sections of the Deed of Trust cited by Stewart.  Accordingly, he has not stated a claim for either breach of contract or intentional breach of contract and these two claims are dismissed.

**E.   Count VIII: Negligence**

Stewart contends that Defendants' conduct breached the duties that inured to them by virtue of the Deed of Trust.  In other words, Stewart argues that Defendants' breach of contract also makes them liable for negligence.  Though Mississippi does recognize a cause of action for tortious breach of contract,

23

<u>Braidfoot v. William Carey Coll.</u>, 793 So.2d 642, 655 (Miss. Ct. App. 2000), Stewart has not stated such a claim because, as discussed above, he does not state a claim for breach of contract. Accordingly, the negligence claim must also be dismissed.

**F.   Counts IX and X: Negligent and Intentional Infliction of Emotional Distress**

Stewart next alleges that Defendants' conduct in promising him that they would review the short sale contracts without doing so and rescinding the foreclosure but withholding working keys to the property resulted in his emotional distress.  To state a claim for negligent infliction of emotional distress, a plaintiff must prove "the usual elements of duty, breach, causation and damages" but also must allege "some sort of physical manifestation of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant." <u>Fouche v. Shapiro & Massey LLP</u>, 575 F.Supp.2d 776, 788-89 (S.D. Miss. 2008) (quoting <u>Am. Bankers' Ins. Co. of Florida v. Wells</u>, 819 So.2d 1196, 1208 (Miss. 2001)).   Stewart has not alleged any physical manifestation of his injury and thus his claim for negligent infliction of emotional distress fails.  Stewart attempts to salvage this claim by citing to <u>Univ. of S. Mississippi v. Williams</u>, 891 So.2d 160, 172-173 (Miss. 2004), which held that a plaintiff can recover for emotional distress *in breach of contract actions* without proof of a physical manifestation of injury.  But, as discussed above, Stewart's breach of contract claims must be

24

dismissed and <u>Williams</u> is inapplicable to Stewart's claim for emotional distress premised on ordinary negligence.

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must allege that defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and be regarded as atrocious, and utterly intolerable in a civilized community." <u>Brown v. Inter-City Fed'l Bank for Sav.</u>, 738 So.2d 262, 264 (Miss. Ct. App. 1999)(quoting <u>Peques v. Emerson Elec. Co.</u>, 913 F.Supp. 976, 982 (N.D. Miss. 1996)). Moreover, "Mississippi courts have repeatedly recognized that 'meeting the requisites of a claim for intentional infliction of emotional distress is a tall order in Mississippi.'" <u>Frascogna v. Wells Fargo Bank</u>, 2009 WL 2843284, *8 (S.D. Miss. Aug. 31, 2009)(quoting <u>Riley v. F.A. Richard & Assocs., Inc.</u>, 16 So.3d 708, 710 (Miss. Ct. App. 2009)). Stewart argues that this claim should not be dismissed because whether Defendants' conduct was intentional or not is a question of fact. But even assuming Defendants' alleged conduct was intentional, it is not sufficiently outrageous or extreme to state a claim for IIED. Stewart alleges, essentially, that Defendants foreclosed on his home without giving due consideration to his short sale proposals and that when they rescinded the foreclosure, they did not provide him with working keys to the property. Such conduct, while frustrating and reflective of poor business management, is simply not outrageous as

a matter of law.  Indeed, other courts in this district have found
very similar conduct insufficient to state a claim for IIED.
<u>Fouche</u>, 575 Fupp.2d at 788 (holding lender's attempt to foreclose
on borrower's home without providing requisite notices did not
state a claim for IIED); <u>Frascogna</u>, 2009 WL 2843284 at *8 (holding
lenders' threatening foreclosure of property to borrowers but never
following through on foreclosure did not state a claim for IIED).
Accordingly, Stewart's claims for negligent and intentional
infliction of emotional distress both must be dismissed.

**G.   Count XI: Fraud**

     Stewart also asserts a claim for common law fraud arising out
of Defendants' alleged misstatements that they would review the
proposed short sale contracts and would not foreclose pending that
review.  Rule 9(b) requires that Stewart plead this common law
fraud claim with particularity.  <u>Carroll v. Fort James Corp.</u>, 470
F.3d 1171, 1174 (5th Cir. 2006).  For the same reasons discussed at
part A regarding the RICO claims, this Court holds that Stewart has
failed to state the "who, what when, where and how" of the alleged
fraud here.  <u>Id.</u>  Accordingly, the claim for common law fraud must
be dismissed.

**H.   Count XII: Accounting**

     Stewart also asserts a claim for an accounting.  Under
Mississippi law, a plaintiff is entitled to an accounting if he can
show: (1) the need of discovery, (2) the complicated character of

the accounts, and (3) the existence of a fiduciary or trust relationship. Re/Max Real Estate Partners, Inc. v. Lindsley, 840 So.2d 709, 712 (Miss. 2003) (citing Henry v. Donovan, 114 So. 482, 484 (Miss. 1927)). Defendants argue that Stewart has not alleged either that the accounts at issue are complicated or that they owed a fiduciary duty to Stewart. Setting aside whether the accounts at issue here are complicated, it is clear that Defendants do not owe a fiduciary duty to Stewart. The Mississippi Supreme Court "has never held that the relationship between a mortgagor and mortgagee is a fiduciary one." Hopewell Enters., Inc. v. Trustmark Nat'l Bank, 680 So.2d 812, 816 (Miss. 1996). Instead, the mortgagor-mortgagee relationship is "simply an arms length business transaction." Id. at 817. Relying on Re/Max, Stewart argues that a fiduciary relationship is not a required element of a claim for accounting but only a factor to consider. But this Court does not agree that Re/Max stands for that proposition and the Re/Max court specifically found that a fiduciary duty existed there before granting an accounting to the plaintiff. Accordingly, Stewart's claim for an accounting is dismissed because he has not alleged a fiduciary relationship.

## I.   Count XIII: Wrongful Foreclosure

Stewart also asserts a claim for wrongful foreclosure. Mississippi recognizes a claim for wrongful foreclosure where "an unlawful foreclosure is attempted solely from a malicious desire to

injure the mortgagor; or ... where the foreclosure is conducted negligently or in bad faith, to his detriment." <u>Nat'l Mortg. Co. v. Williams</u>, 357 So.2d 934, 935-36 (Miss. 1978)(quoting 59 C.J.S. Mortgages § 535 (1971)).   Defendants argue that the wrongful foreclosure claim is moot because they rescinded the foreclosure. Defendants further argue that the foreclosure was not malicious or conducted negligently or in bad faith.   Stewart argues that even though the foreclosure was rescinded, he still suffered damages from it, namely loss of enjoyment of the property, loss of property value due to stigma, and actual damages that occurred as a result of the foreclosure.   He further argues that <u>Williams</u> allows recovery for wrongful foreclosure when the foreclosure is executed negligently as he alleges here.

   <u>Williams</u> does suggest that a borrower can state a claim for wrongful foreclosure where the foreclosure was executed negligently and Stewart has sufficiently alleged a negligent foreclosure.[4] Though Defendants ultimately rescinded the foreclosure sale of Stewart's property, this Court is persuaded that Stewart may nonetheless have damages from the foreclosure for which the rescission does not fully compensate him.   In any event, Stewart

---

   [4] This Court notes that there appears to be an open question under Mississippi law regarding whether a wrongful foreclosure claim can arise out of "improper execution of a rightful foreclosure" which seems to be what Stewart alleges here. <u>Williams</u>, 357 So.2d at 936.   Neither party has addressed this potentially novel question of law, however, and thus this Court does not reach it at this time.

has sufficiently alleged a claim for wrongful foreclosure to survive this Motion to Dismiss and will be permitted to develop the facts as to this claim.

### IV.  Conclusion

For the foregoing reasons,

**IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss [docket entry no. 7] is **GRANTED** as to Counts I-III (RICO fraud), Count V (promissory estoppel), Count VII (breach of contract and intentional breach of contract), Count VIII (negligence), Counts IX and X (negligent and intentional infliction of emotional distress), Count XI (fraud), Count XII (accounting), and Count XIV (temporary and permanent injunction).  The Motion is **DENIED** as to Count IV (breach of the duty of good faith and fair dealing), Count VI (equitable estoppel), and Count XIII (wrongful foreclosure).


**SO ORDERED** this 29th day of March, 2011.


    s/ David Bramlette

**UNITED STATES DISTRICT JUDGE**